UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRISURA SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff-Counter Defendant,<br><br>v.<br><br>OM TRANSPORTATION,<br><br>Defendant,<br><br>and<br><br>FRANK LANDRY, AS ADMINISTRATOR OF THE ESTATE OF ZACHARY LANDRY,<br><br>Defendant-Counter Claimant. | Case No. 26-cv-00121-JPG |

**MEMORANDUM AND ORDER**

This case is before the Court on Plaintiff-Counter Defendant Trisura Specialty Insurance Company ("Trisura")'s Motion to Dismiss (Doc. 35). Defendant-Counter Claimant Frank Landry ("Landry") filed a response (Doc. 42), and Trisura filed a reply (Doc. 45).

## I. BACKGROUND

Landry alleges the following facts in his counterclaim, which the Court accepts as true for the purposes of this motion.

On May 30, 2024, an OM Transportation ("OM") commercial tractor-trailer operated by Homero Molina ("Molina") broke down on I-55 in East St. Louis, Illinois, and caused a fatal collision with Landry's son. At the time of the collision, Trisura insured OM under a liability insurance policy that included an MCS 90 Endorsement.

On June 26, 2024, Landry's counsel sent a "Notice of Representation" to both OM and Trisura indicating that Landry was asserting a wrongful death claim against OM. A week later,

on July 3, 2024, Dynamic Claims Administrative Services ("Dynamic Claims"), as claims administrator for Trisura, sent written acknowledgement of Landry's claim against OM. Six days later, Dynamic Claims, on behalf of Trisura, denied coverage to OM. OM was not notified of the coverage denial.

On December 20, 2024, Landry filed a wrongful death suit in the St. Clair County Circuit Court against OM, Molina, and El Transport. OM did not file an appearance or answer because it believed that the matter had been fully handled by Trisura. On April 2, 2025, the St. Clair County Circuit Court entered a default judgment against OM, Molina, and El Transport, in the amount of $25,424,044.20 with interest accruing at 9%. Landry provided Trisura and OM with a copy of the judgment.

On June 13, 2025, Trisura, for the first time, issued a reservation of rights letter to OM and agreed to provide a legal defense. Counsel hired by Trisura to represent OM first contacted Landry's attorney on June 27, 2025.

On July 2, 2025, Landry offered in writing to resolve his claims against OM for payment of liability policy limits, but neither OM nor Trisura responded to the offer before it expired. Nearly two months later, OM filed a petition to vacate the judgment. The petition was denied by the St. Clair County Circuit Court on September 4, 2025.

On September 18, 2025, Landry served Trisura with a citation to discover assets. In its answer to the citation, Trisura identified and produced an insurance policy, but denied that the insurance policy covered the accident. It also filed this declaratory judgment action seeking a declaration that it owes no obligation with respect to the allegations or judgment in the wrongful death suit.

On April 20, 2026, the St. Clair County Circuit Court assigned OM's rights and remedies against Trisura to Landry. Landry filed his answer to this declaratory judgment action on May 22, 2026, which asserts two counterclaims against Trisura: (1) liability insurance coverage and payment; and (2) bad faith liability and extracontractual damages.

## II. **ANALYSIS**

Trisura first seeks to dismiss Landry's claim for bad-faith liability and extracontractual damages for failure to state a claim. Before determining whether Landry has stated a bad-faith claim, the Court must determine which law governs that claim.[1]

Because this action is before the Court under its diversity jurisdiction, the Court applies the choice-of-law rules of state in which it sits—here, Illinois. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). Illinois applies forum law "unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020) (citation omitted). "The party seeking the choice-of-law determination bears the burden of demonstrating a conflict, *i.e.*, that there exists a difference in the law that will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014).

Trisura has not met its burden of demonstrating a conflict between Illinois and Texas law. Trisura argues only that Landry's bad faith claim fails under both Illinois and Texas law. But showing that the same result follows under both states' laws does not establish an outcome-determinative conflict between them. Trisura merely cites the elements of a bad faith claim under both Illinois and Texas law and asserts that Landry's claim fails under both. That is insufficient

[1] The Court need not determine what law applies to Landry's claim for liability insurance coverage and payment at this time because that issue is not before the Court.

to carry Trisura's burden of demonstrating an actual conflict. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). Thus, the Court does not need to conduct a choice-of-law analysis at all.

Even if a choice-of-law analysis were necessary, the Court concludes that Illinois law applies. Illinois has the most significant relationship to Landry's bad faith claim. The underlying litigation and opportunities to settle took place in Illinois, and the $25 million judgment was entered in Illinois and remains unpaid here. *See W. Side Salvage, Inc. v. RSUI Indemnity Co.*, 215 F. Supp. 3d 728, 740 (S.D. Ill. 2016) (applying Illinois's tort choice-of-law principles and concluding that Illinois law governed the bad-faith claim because the underlying litigation and settlement opportunities occurred in Illinois and the parties' relevant relationship arose from their interactions during that litigation). Illinois also has the most significant contacts to Landry's bad faith claim. Although the insurance policy was issued in Texas to a Texas corporation, OM sought a defense from Trisura in an Illinois action alleging liability for acts committed by OM in Illinois. *See Diamond State Ins. Co. v. Chester-Jensen Co.*, 611 N.E.2d 1083, 1094 (Ill. App. Ct. 1993) (applying Illinois's contract choice-of-law principles and finding that Illinois law applied to breach-of-contract claim because, while Pennsylvania was where the policies were delivered, Illinois was the place of performance and location of the insured risk); *see also Am. Builders & Contractors Supply Co. v. Home Ins. Co.*, No. 96 C 5041, 1997 WL 43017, at *2 (N.D. Ill. Jan. 28, 1997) (applying Illinois's contract choice-of-law principles and concluding that Pennsylvania law governed the bad-faith claim because, despite Illinois being the location where the policies were delivered and executed, the insured requested a defense from its insurer in a suit brought in Pennsylvania alleging liability for acts committed by the insured in Pennsylvania).

Now that the Court has determined Illinois law applies, it turns to whether Landry has plausibly alleged a bad-faith claim. When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl. Corp.*, 550 U.S. at 555; *EEOC. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 556). Although liberal federal notice pleading standards ensure that even non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of complaints that plead too much. A case can be dismissed because a complaint pleads facts establishing that the defendant is entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

Generally, Illinois does not recognize an independent tort of bad faith. *See Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996) ("We also hold, however, that the tort of bad faith is not a separate and independent tort action that is recognized in Illinois."). A narrow exception exists, however, for claims alleging an insurer's failure to settle. *See id.* at 903; *Haddick ex rel.*

*Griffith v. Valor Ins.*, 763 N.E.2d 299, 303 (Ill. 2001). Under certain circumstances, this exception also encompasses an insurer's bad-faith refusal to enter settlement negotiations. *See Kavanaugh v. Interstate Fire & Cas. Co.*, 342 N.E.2d 116, 121 (Ill. App. Ct. 1975); *Haddick*, 763 N.E.2d at 304 n.1; *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 215 F. Supp. 3d 728, 740 (S.D. Ill. 2016).

The Seventh Circuit has explained the rationale for the exception:

> The paradigmatic duty-to-settle case involves three parties: the injured third party; the insured, who is being sued; and the insurer, who controls the insured's defense. If the third party sues the insured for an amount above the policy limit and seeks a settlement at the upper limit of the policy, a conflict of interests arises. In this situation, the insurer may be tempted to decline the settlement offer, no matter how good the deal is for the insured, and go to trial. It makes no difference to the insurer's bottom line whether the case is settled or the jury awards astronomical damages; in either event it will pay out only the maximum on the policy. And if the case goes to trial, at least there's a shot that they will win and pay nothing. The insured, on the other hand, calculates the risks of trial differently because he will be stuck paying anything above the policy limit. To combat the temptation to ignore an insured's interest and to make sure that the intent behind the insurance contract is upheld, Illinois courts have recognized that an insurer has a duty to act in good faith in responding to settlement offers, and if that duty is breached the insurer is on the hook for the entire judgment, regardless of the policy limit.

*Iowa Physicians' Clinic Med. Found. v. Physicians Ins. Co. of Wisconsin*, 547 F.3d 810, 812 (7th Cir. 2008) (internal citations and quotations omitted).

"Because the tort of breach of duty to settle was recognized to combat abuses by liability insurers where a settlement offer within policy limits is made prior to trial, the requirement of reasonable probability of both liability and recovery in excess of policy limits has been attached to the tort." *Chandler v. Am. Fire and Cas. Co.*, 879 N.E.2d 396, 400 (Ill. App. Ct. 2007).[2]

[2] Landry argues that *Chandler* did not establish a bright-line rule requiring a third-party settlement demand to be made before judgment to support a bad-faith claim. He relies on *Cernocky v. Indem. Ins. Co. of N. Am.*, 216 N.E.2d 198 (Ill. App. Ct. 1966) and *Am. Alt. Ins. Corp. v. Vill. of Dolton*, No. 25-cv-3226, 2026 WL 509217 (N.D. Ill. Feb. 24, 2026), for the proposition that a pre-judgment settlement demand is not required. But both cases are

Accordingly, the duty to settle "arises when a claim has been made against the insured and there is a reasonable probability of recovery in excess of policy limits and a reasonable probability of a finding of liability against the insured." *Haddick*, 763 N.E.2d at 304. And a breach of the duty to settle can "occur only *up to the time any excess judgment is entered* against the insured, at which time the insurer can no longer accept the offer to settle" to avoid a trial and a potential excess judgment. *Id.*

Landry has failed to state a claim for bad faith. He does not allege that he made a settlement demand within the policy limits before entry of the default judgment. He also does not allege facts from which the Court can plausibly infer that Trisura knew of his willingness to settle within policy limits but refused to negotiate.[3] Because Landry has not stated a bad faith claim cognizable under Illinois law, the Court will dismiss this claim without prejudice.

Trisura next asks the Court to strike the allegations in paragraphs 22 and 23[4] of Landry's counterclaim because they cannot support his claim under 215 ILCS 5/155.

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored because they are often employed for the sole purpose of causing delay. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). For

---

distinguishable. In *Am. Alt. Ins. Corp.*, the claimants made numerous offers to settle within the policy limits before the jury returned its verdict, and the insurer rejected those demands without justification. 2026 WL 509217, at *1. In *Cernocky*, the insurer summarily and emphatically refused to discuss settlement, to disclose the policy limits so that the claimants could determine whether they could make an offer within the limits, or to permit the plaintiffs' personal counsel to make such an offer. 216 N.E.2d at 204.

[3] The Court acknowledges that Landry states facts that support these claims in his response brief. However, "a Rule 12(b)(6) motion must be decided solely on the face of the complaint and any attachments that accompanied its filing." *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010). Thus, the Court has not considered these facts in its decision.

[4] Trisura's motion identifies these paragraphs as 21 and 22, but it quotes the text from paragraphs 22 and 23. Accordingly, the Court will assume it is seeking to strike paragraphs 22 and 23.

this reason, the Court will not strike matter from a pleading pursuant to Rule 12(f) "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed.); *accord Estrada on behalf of Q.R. v. Pullen*, No. 23-CV-1142-SMY, 2023 WL 6465299, at *2 (S.D. Ill. Oct. 4, 2023). The burden on a motion to strike is upon the moving party. *See Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998). This Court has "considerable discretion" in deciding whether to strike defenses under Rule 12(f). *See Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

Section 155 of the Illinois Insurance Code provides an award of attorney fees and an additional penalty where an insurer's refusal or delay in payment of claims was vexatious and unreasonable. 215 ILCS 5/155. The purpose of the statute is "to make suits by policyholders economically feasible and punish insurance companies for misconduct." *McGee v. State Farm Fire & Cas. Co.*, 734 N.E.2d 144, 151 (Ill. App. Ct. 2000). "'Whether an insurer acted unreasonably or vexatiously presents an issue of fact' that requires 'courts to consider the totality of circumstances.'" *Sutherland-Garnier Funeral Home, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 3:23-CV-1501-MAB, 2023 WL 8715859, at *2 (S.D. Ill. Dec. 18, 2023) (quoting *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007) (citations omitted)).

Trisura has not met its burden to show that the allegations in paragraphs 22 and 23 have no possible relation to this litigation. These allegations establish when Trisura provided its insured with defense counsel and when Landry attempted to settle the case for policy limits.

Even if the settlement offer cannot form the basis of Landry's § 155 claim—a question the Court need not decide at this time—the offer is relevant to whether Trisura's conduct resulted in delay. Landry alleges that he offered to resolve his claims against OM in exchange for payment of the policy limits on July 2, 2025. He further alleges that OM's counsel stated that they would discuss the offer and follow up with Landry, but neither Trisura nor OM responded before the offer expired. Landry also alleges that OM did not file a petition to vacate the default judgment until two months later. These allegations establish a timeline that Landry contends demonstrates Trisura's vexatious and unreasonable delay in resolving the matter. The timeline is directly relevant to Landry's § 155 claim. Because Trisura cannot meet its burden to show that these allegations have no possible connection to this controversy, the Court will not strike paragraphs 22 and 23.

## III. CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS in part and DENIES in part** Trisura's Motion to Dismiss (Doc. 35);
    - The motion is **GRANTED** to the extent it seeks to dismiss Count 2, and that claim is **DISMISSED without prejudice;**
    - The motion is **DENIED** in all other respects; and
- **ORDERS** that Landry shall have up to and including October 2, 2026, to file an amended counterclaim.

**IT IS SO ORDERED.**
**DATED**: **September 2, 2026**

J. Phil Gilbert

**J. PHIL GILBERT**
**United States District Judge**